PETER SHAPIRO, ESSEX COUNTY EXECUTIVE, APPELLANT,
v. WILLIAM H. FAUVER, COMMISSIONER, NEW JERSEY
DEPARTMENT OF CORRECTIONS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 7, 1984—Decided March 12, 1984.

Before Judges ANTELL, JOELSON and McELROY.

*Bonnie Blume Goldsamt,* Assistant County Counsel, argued the cause for appellant, (*David H. Ben-Asher,* County Counsel; *Bonnie Blume Goldsamt* on the brief).

*Susan R. Oxford,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Deborah T. Poritz,* Deputy Attorney General, of counsel and *Susan R. Oxford* on the brief).

The Opinion of the Court was delivered by

ANTELL, P.J.A.D.

On June 19, 1981 Executive Order No. 106 was signed by Governor Brendan T. Byrne. Authorized by *N.J.S.A.* App. A:9–34 of the Civil Defense and Disaster Control Act, it directed that the Commissioner of the Department of Corrections ("Commissioner") designate the place of confinement of all inmates con-

fined in all state and county penal or correctional institutions and for this purpose the Commissioner was empowered to utilize "any available, suitable, and appropriate institution or facility, whether owned by the State, a County, or any political subdivision of this State, or any other person, for the confinement of inmates confined in the State and/or County penal or correctional institutions." Pertinent to this appeal, paragraph 10 of the order provides: "The Commissioner of Corrections shall develop an appropriate compensation program for the counties."

Executive Order No. 106 has been extended by a number of orders signed by Governor Byrne and his successor, incumbent Governor Thomas H. Kean.

By letter of June 29, 1981 from the Commissioner to the Director of Corrections for Essex County, the Essex County Jail and its Annex were designated as places of confinement "for all persons currently sentenced by the courts in Essex County to the care and custody of the Commissioner of the New Jersey Department of Corrections," and those facilities have since been utilized accordingly by the State.

The issue raised by this appeal centers on so much of Executive Order No. 106 which directs the Commissioner to develop "an appropriate compensation program for the counties." Plaintiff contends that the weighted average per diem cost to house an inmate is $63.36, whereas the Commissioner allows only $42.95 in reimbursement. His determination to this effect is stated in a letter dated February 18, 1983 replying to plaintiff's letter of January 27, 1983 asking for reimbursement at the rate of $60 a day. No hearing has been conducted and we do not have the benefit of any findings by the Commissioner. However, on April 8, 1983 the county filed its notice of appeal from the Commissioner's letter determination of February 18, 1983.

We are here asked to decide that the Commissioner's action is arbitrary, capricious and unreasonable and to direct the State to reimburse Essex County for its actual weighted average per diem cost per inmate. The only source of authority for the

county's claim of entitlement to reimbursement is so much of Executive Order No. 106 which directs the Commissioner to "develop an appropriate compensation program for the counties." Although under *N.J.S.A.* 2C:43–10 and *N.J.S.A.* 30:4–6 the Commissioner is ordinarily required to receive for safekeeping in State Prison all convicted defendants within 15 days of conviction, it was held in *Worthington v. Fauver,* 88 *N.J.* 183, 200 (1982) that Executive Order No. 106 suspends the normal operation of these statutes. It was also there held that the actions taken by the legislative and executive branches of government in connection with the foregoing exercise of emergency powers by the Governor were in all respects valid and effectual. Although the Supreme Court there noted that the order's explicit provision for compensation to the counties obviated a major concern expressed prior to Executive Order No. 106 in *Cryan v. Klein,* 148 *N.J.Super.* 27 (App.Div.1977), holding that under *N.J.S.A.* 2A:164–18 (the predecessor of *N.J.S.A.* 2C:43–10) the Commissioner of Corrections was obliged to receive prisoners sentenced to a state institution within 15 days, the Court nowhere suggested that the payment of compensation was essential to the validity of the Order. As the decision states, quoting *United States v. Yoshida Intern. Inc.,* 526 *F.2d* 560, 583 (Cust. & Pat.App.1975), " '[I]f every law applicable to tranquil times were required to be followed in emergencies, there would be no point in delegating emergency powers and no adequate, prompt means for dealing with emergencies.' "

In our view, the action of the Governor in directing payment of compensation to the counties was not compelled by law and therefore there is no legal or constitutional standard against which to measure the Commissioner's exercise of discretion. In directing the Commissioner to formulate an "appropriate" program of compensation the Governor evidently chose to leave the entire question of how much the counties should be paid to the expertise of the department of corrections. If it was the Governor's intention that the counties should be fully reimbursed for their actual cost the executive order could readily

have said so. Taking into consideration the fact that he did not direct such a result and the further fact that the counties were legally entitled to nothing in compensation for the emergency takeover of their jail facilities except what the Governor chose to allow, we cannot perceive any criterion by which the Commissioner's level of reimbursement could be other than appropriate.

If we are mistaken in our view that the Commissioner's level of reimbursement is, almost by definition, appropriate we are at a loss to discern a suitable judicial remedy. Since plaintiff's grievance is that the Commissioner is not complying with a directive of his own chief executive logic dictates that this complaint be presented to the Governor. Should the Governor decide that the Commissioner's action did not reflect an "appropriate compensation program" he is free to modify it to accomplish what he intended. If, on the other hand, he concludes the Commissioner's determination is compatible with his intentions, such a determination cannot be the subject of judicial modification. There is no legislated standard to which the Governor is bound, and the judicial branch of government will not displace the Governor as the ultimate judge of whether the intent and purpose of his directives are being properly implemented by his own administration.

Affirmed.

JOELSON, J.A.D. dissenting

My colleagues conclude that the Governor was not compelled by law to direct the payment of any compensation at all to the counties. It is true that under *N.J.S.A.* App. A:9–33, the Governor is given emergency power to utilize all resources of political subdivisions of the State, and that no provision is thereunder made for compensation. Inasmuch as the Governor's continuously renewed executive orders direct that the Commissioner of Corrections develop "an appropriate compensation program for the counties," the question of whether any compensation at all is required need not here be finally resolved. How-

ever, in the event that in his periodic resort to the use of an executive order, the Governor should be inclined to dispense with the necessity for the State to reimburse the counties at all, some comment on the need for compensation seems warranted. I am of the opinion that in view of what may now be given the anomalous label of a "permanent emergency," it would be manifestly unfair and arbitrary to foist upon the counties the entire cost of the maintenance of prisoners who normally should be the responsibility of the State.[1]

Turning now to the interpretation of "... an appropriate compensation program" in the executive orders, it should be noted that on January 27, 1983, appellant wrote a letter to respondent stating that a study conducted by the county indicated that the cost to the county per prisoner was $60 per day. Appellant, therefore, advised respondent by the letter that it would submit invoices based on that rate. Respondent's answer was that "... based on the funds that are available to the Department, we are unable to pay more than $42.95 per day." He added that "[t]his is a figure we have committed to pay all counties." Respondent did not in any way contest the accuracy of appellant's *per diem* computations. It should also be noted that when at the time of oral argument, respondent's attorney was asked what the situation would be if the department had funds which permitted only a payment of $10 per day, counsel replied that $10 would then be appropriate. To interpret "appropriate compensation" in such a way is to be high-handed and arbitrary. Fairness demands that compensation which reimburses the county for its actual costs should be considered appropriate. It is adding insult to injury for the State to saddle its duties upon the counties and then to demand that the

---

[1]The dissent in *Worthington v. Fauver,* 180 *N.J.Super.* 368 (App.Div.1981), which was rejected by the Supreme Court, 88 *N.J.* 183 (1982), referred to the "... distinct possibility that, after testing the judicial waters and obtaining our imprimatur on the constitutionality of his action, the Governor may decide to extend or later renew his executive order for another 90-day term and then for another and another, indefinitely."

counties pay for the privilege of discharging such duties. Furthermore, any standard other than reimbursement of costs would serve to remove from the Legislature the stimulus " . . . to act expeditiously to address a problem within its proper sphere even though that might involve thorny political considerations." *Worthington v. Fauver*, 88 *N.J.* at 203.

I would reverse and remand to the Commissioner of the Department of Corrections with instructions to reimburse the County of Essex for those reasonable costs actually incurred in order to maintain prisoners kept in the county jail by reason of the executive orders.